**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LINDA L. RUBLY, Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. 06-06J |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY, Defendant. | ) | JUDGE GIBSON |

**MEMORANDUM OPINION and ORDER OF COURT**

**GIBSON, J.**

This matter comes before the Court on the parties' cross-motions for summary judgment and the briefs in support thereof (Document Nos. 8-11). This Court has jurisdiction of this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the Court will reverse the decision of the Commissioner of Social Security in this case, and remand the case for further proceedings consistent with this opinion.[1]

Plaintiff Linda L. Rubly ("Plaintiff") protectively filed applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act on February 4, 2003, alleging disability as of August 15, 2000. R. p. 12. Her claims were initially

[1] The fourth sentence of 42 U.S.C. § 405(g) provides: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

denied on July 2, 2003, and she proceeded to file a timely request for a hearing on July 31, 2003.[2] *Id.* On January 6, 2004, a hearing was held in DuBois, Pennsylvania, before Administrative Law Judge Robert Deitch ("ALJ"). R. p. 21. The Plaintiff, who was represented by counsel, appeared and testified at the hearing. R. pp. 23-37. Thomas R. Wyland, an impartial vocational expert, was present for the entire hearing and testified before its conclusion. R. pp. 37-44.

On March 17, 2004, the ALJ issued a decision which was unfavorable to the Plaintiff. R. p. 19. The Appeals Council denied the Plaintiff's request for review on November 10, 2005, thereby making the ALJ's decision the final decision of the Commissioner of Social Security in this case. R. p. 5. The Plaintiff filed a complaint in this matter on January 11, 2006. Document No. 3. Jo Anne Barnhart, Commissioner of Social Security ("Commissioner"), filed an answer on April 12, 2006. Document No. 5. The Plaintiff and the Commissioner filed cross-motions for summary judgment on May 10, 2006, and June 13, 2006, respectively. Document Nos. 8 & 10.

A District Court's review of the administrative determinations of the Commissioner of Social Security is governed by the standard of whether the record contains substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 853 (1971). Substantial evidence is more than just a scintilla of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted); *see also, Stewart v. Secretary*, 714 F.2d 287 (3d Cir. 1983). In

[2] The record indicates that the Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act on June 30, 1999, alleging that she became disabled on January 21, 1999. R. pp. 87-89. This application was denied on October 4, 1999, and subsequently denied on reconsideration on February 2, 2000. R. pp. 52-55, 59-61. Apparently, the Plaintiff took no further action on that application. Document No. 11 p. 1.

discussing this standard of review, the Third Circuit has stated:

> This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion. See *id.* at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). *De novo* review of the facts is prohibited and deference must be given to the Commissioner's findings unless there is an absence of substantial evidence to support such findings in the record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986); 42 U.S.C. § 405(g).

When resolving the issue of whether a claimant is disabled and therefore entitled to Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI) benefits, the Commissioner uses a five-step sequential evaluation process. The U.S. Supreme Court recently summarized this five-step process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 1520(d), 416.920(d). If the claimant's impairment is

> not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 379-380, 157 L.Ed.2d 333, 339-340 (2003) (footnotes omitted; brackets in original).

In his decision, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date. R. p. 18. Moving on the second step of the sequential evaluation process, the ALJ found the Plaintiff to be suffering from lumbar disc disease, osteoporosis of the lumbar spine and left hip, peripheral neuropathy, adhesive capsulitis, impingement syndrome and cubital tunnel syndrome of the left upper extremity. *Id.* The Plaintiff's lumbar disc disease, osteoporosis of the lumbar spine and left hip, and peripheral neuropathy were deemed to be "severe" for purposes of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). *Id.* Her adhesive capsulitis, impingement syndrome and cubital tunnel syndrome of the left upper extremity were not found to be severe because they did not have more than a minimal impact on her ability to perform work-related tasks. *Id.* The ALJ concluded that the Plaintiff's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ made the following finding with respect to the Plaintiff's residual functional capacity:

> The claimant has the residual functional capacity to perform the physical exertion requirements of work except for work requiring lifting and carrying objects weighing more than 20 pounds. There are no nonexertional limitations[.]

*Id.* At the fourth step of the process, the ALJ concluded that the Plaintiff was unable to perform her past relevant work as a home health aide or fuser. *Id.*

On the date of the ALJ's decision, the Plaintiff was fifty-four years of age and had a limited education. *Id.* The ALJ determined that the Plaintiff had no acquired work skills that were transferable to the skilled or semi-skilled work functions of other jobs. *Id.* Under such circumstances, the ALJ concluded that a finding of "not disabled" was directed by Rule 202.10 of 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Id.*

In support of her motion for summary judgment, the Plaintiff makes three distinct arguments. First, she contends that the ALJ erred at step three of the sequential evaluation process by failing to evaluate her peripheral neuropathy pursuant to Listing 11.14 of 20 C.F.R. Pt. 404, Subpt. P, App. 1. Document No. 9 pp. 7-9. Second, she argues that the ALJ placed significant reliance on a potentially incorrect interpretation of a report of an examining physician. *Id.* pp. 10-12. Third, she asserts that the ALJ failed to evaluate the impact that her use of a cane would have on her ability to perform jobs consistent with her residual functional capacity. *Id.* pp. 13-15. The Court will proceed to address each argument in turn.

The Plaintiff's first argument centers on the third step of the sequential evaluation process, which involves an inquiry into whether a claimant can establish the existence of *per se* disability solely on the basis of the presence of a listed impairment. At step two of the process, the ALJ determined that the Plaintiff suffered from peripheral neuropathy, and that this impairment was severe. R. p. 18. The Court acknowledges that "[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360 (3d Cir.

2004)(emphasis in original), quoting *McDonald v. Secretary of Health and Human Res.*, 795 F.2d 1118, 1123 (1st Cir. 1986). Therefore, the ALJ's conclusion that the Plaintiff's peripheral neuropathy was severe did not alone suffice to establish that she was statutorily disabled. Nonetheless, it did impose upon the ALJ a duty to evaluate this impairment, in combination with the Plaintiff's other impairments, under the appropriate listings at the third step of the sequential evaluation process.

If a claimant can show that his or her impairment either meets or equals a listed impairment, a finding of disability is made without regard to the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). The U.S. Supreme Court explained the nature of this inquiry in *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 439 U.S. at 531, 110 S.Ct. at 891, 107 L.Ed.2d at 980. Unlike a residual functional capacity assessment made pursuant to 20 C.F.R. §§ 404.1545 and 416.945, an equivalency evaluation is not based on a function-by-function analysis. In *Sullivan*, the Supreme Court made it clear that "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of [her] unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531, 110 S.Ct. at 892, 107 L.Ed.2d at 980. The functional consequences of an unlisted impairment, irrespective of their nature and extent, cannot justify a determination of equivalence. *Sullivan*, 493 U.S. at 532, 110 S.Ct. at 892, 107 L.Ed.2d at 980. Rather than focusing on the functional limitations that a given impairment, or combination of impairments, imposes on a claimant, the third step of the sequential evaluation process focuses on the

precise nature of the particular impairment at issue.

The relevant portions of the listings state as follows:

> 11.14 *Peripheral neuropathies.*
> With disorganization of motor function as described in 11.04B, in spite of prescribed treatment.
>
> ***
>
> [11.04B]
> Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C).
>
> ***
>
> [11.00C]
> C. *Persistent disorganization of motor function* in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (emphasis in original). In the instant case, the ALJ's evaluation at the third step of the sequential evaluation process consisted of the following:

> The medical evidence shows the claimant has impairments consisting of lumbar disc disease, osteoporosis of the lumbar spine and left hip and peripheral neuropathy. Although severe, the claimant's impairments, singly or in combination, do not meet or equal any of the criteria set forth in Listing 1.00 Musculoskeletal System, 4.00 Cardiovascular System or any of the other listed impairments set forth in Appendix 1, Subpart P, Regulations No. 4. In reaching this conclusion, the Administrative Law Judge notes that a physical examination in June 2003 by Dr. Jawahar Suvarnakar revealed normal range of motion of the lumbar spine and extremities with 5/5 strength of the upper and lower extremities and no pitting edema, calf tenderness or varicose veins (Exhibit 19F). Moreover, diagnostic studies of the lumbar spine have revealed no evidence of disc herniation, spondylosis, or nerve root impingement (Exhibits 2F, 11F, 12F). Finally, it is noted that no medical source has opined that the claimant's

> impairments either meet or equal a listed impairment.
>
> Accordingly, the Administrative Law Judge concludes the claimant's impairments do not meet or equal any of the listed impairments set forth in Appendix 1, Subpart P, Regulations No. 4.

R. p. 13. Although he found the Plaintiff to be suffering from peripheral neuropathy, the ALJ did not mention Listing 11.14. *Id.* The ALJ's discussion about the range of motion in the Plaintiff's upper extremities could have been based on an evaluation under Listing 11.14, but it also could have been based solely on the language in Listing 1.00 dealing with a claimant's inability to perform fine and gross movements effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Since the ALJ expressly mentioned Listing 1.00 without mentioning Listing 11.14, the Court cannot assume that he actually evaluated the Plaintiff's peripheral neuropathy under Listing 11.14.

The Commissioner argues that the ALJ accounted for Listing 11.14 when he used the words "any of the other listed impairments[.]" Document No. 11 p. 11. The U.S. Court of Appeals for the Third Circuit has addressed similar situations on three occasions. In *Burnett v. Commissioner of Social Security*, 220 F.3d 112 (3d Cir. 2000), the Court of Appeals held that an ALJ's conclusory statement that a claimant's impairments did not meet or medically equal a listed impairment did not suffice. *Burnett*, 220 F.3d at 119-120. Such a conclusory statement, without additional analysis, precluded meaningful judicial review under 42 U.S.C. § 405(g). *Id.* The Court of Appeals explained the *Burnett* standard in *Jones v. Barnhart*, 364 F.3d 501 (3d Cir. 2004):

> *Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review.

*Jones*, 364 F.3d at 505. The parties in the instant case dispute the question of whether the ALJ's analysis at the third step of the sequential evaluation process was sufficient to satisfy this standard.

The Court of Appeals addressed this issue again very recently. In *Poulos v. Commissioner of Social Security*, 2007 U.S. App. LEXIS 1496, 2007 WL 163065 (3d Cir.), the Court of Appeals explained:

> Appellant asserts that the ALJ did not properly consider whether Appellant's combination of impairments was equivalent to one of the Listings and did not properly evaluate the effect of obesity on Appellant's other impairments. Appellant also argues that the ALJ "apparently misunderstood the medical evidence and severity of [Appellant's] conditions." (Appellant's Br. at 20.) Appellant argues, citing to *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112 (3d Cir. 2000), that the ALJ's failure to fully discuss and apply the Listings in step three is clear error. We note that Appellant does not argue that the ALJ should have applied a different Listing, nor does he point to specific evidence ignored by the ALJ that would indicate that Appellant's impairments are equivalent to one of the Listings the ALJ identified. The only Listing Appellant points to is former Listing 9.09 on Obesity, which had been rescinded before Appellant filed his claim.
>
> An ALJ must provide a sufficient framework of reasoning for a court to conduct "meaningful judicial review" of the ALJ's decision. *Burnett*, 220 F.3d at 119. In *Burnett*, the ALJ only set forth a conclusion that the claimant's impairment did not meet the level of severity of any of the listed impairments. Here, in contrast, the ALJ issued the step three finding only after reviewing all of the objective medical evidence, including evidence of Appellant's obesity, and explicitly stating which Listings he was considering. We conclude that this analysis satisfies the requirements of *Burnett*. Furthermore, after reviewing the record, we conclude that the ALJ's step three decision is supported by substantial evidence.

*Poulos*, 2007 U.S. App. LEXIS 1496, at 13-14, 2007 WL 163065, at 5. In the instant case, the Plaintiff *does* argue that the ALJ should have applied a different listing. Document No. 9 pp. 7-9. This argument has merit, since the ALJ did not mention Listing 11.14 even though he expressly concluded

that the Plaintiff suffered from peripheral neuropathy. R. p. 13. The ALJ's failure to address Listing 11.14, under these particular circumstances, precludes meaningful judicial review of his determination at the third step of the sequential evaluation process. For this reason, the case must be remanded to the Commissioner for further administrative proceedings. Having determined that peripheral neuropathy was one of the Plaintiff's "severe" impairments, the ALJ was required to specifically evaluate that impairment under the appropriate listing.

The Commissioner argues that the Plaintiff's impairments do not meet or medically equal Listing 11.14. Document No. 11 pp. 12-16. There is no need for the Court to analyze this issue independently, since it is clear that the Commissioner's decision cannot be affirmed on a ground other than that which was actually adopted by the ALJ. *Fargnoli v. Massanari*, 247 F.3d 34, 43-44, n. 7 (3d Cir. 2001). The Court cannot rectify the ALJ's error by trying to determine how he would have decided the equivalency issue had he conducted a proper evaluation under Listing 11.14. *Id.* It is, of course, possible that the ALJ actually conducted this evaluation without expressly mentioning it in his opinion, but the Court cannot just assume that the ALJ specifically considered a highly relevant listing that was left unaddressed. *Fargnoli*, 247 F.3d at 43-44 ("The ALJ makes no mention of any of these significant contradictory findings, leaving us to wonder whether he considered and rejected them, considered and discounted them, or failed to consider them at all."). On remand, the Commissioner will have to address the Plaintiff's peripheral neuropathy within the context of Listing 11.14.

In her second argument, the Plaintiff contends that the ALJ erred in determining her residual functional capacity. Document No. 9 pp. 10-12. Specifically, she argues that the ALJ wrongfully placed reliance on a questionable interpretation of a physical capacities evaluation form completed by

an examining physician. *Id.* Unlike the equivalency analysis conducted at step three, the residual functional capacity assessment must be made on a function-by-function basis, focusing on the ability or inability of the claimant to perform specific job-related tasks. *Santiago v. Barnhart*, 367 F.Supp.2d 728, 733 (E.D.Pa. 2005); *Pearson v. Barnhart*, 380 F.Supp.2d 496, 505-508 (D.N.J. 2005). The Plaintiff's argument centers on the differences between the requirements of light[3] and sedentary[4] work.

Dr. Jawahar Suvarnakar examined the Plaintiff on two occasions. The first examination occurred on August 24, 1999. R. p. 448. On that occasion, Dr. Suvarnakar checked boxes indicating that the Plaintiff could frequently lift objects weighing both 2-3 pounds and 10 pounds. R. p. 453. In his examination report, he stated as follows:

> Range of motion chart reveals limitation of lifting and carrying weight to around 10 pounds, mainly on the left side, and right side is normal. Sitting is limited to around six hours or less because of lumbar pain.

R. p. 450. Dr. Suvarnakar examined the Plaintiff again on May 22, 2003. R. p. 440. On that occasion, he clearly checked a box indicating that the Plaintiff could frequently lift objects weighing 2-3 pounds, but it is unclear whether the second mark appears in the box indicating an ability to frequently lift 10

---

[3] 20 C.F.R. § 404.1567(b) provides: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." Identical language is contained in 20 C.F.R. § 416.967(b).

[4] 20 C.F.R. § 404.1567(a) provides: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Identical language is contained in 20 C.F.R. § 416.967(a).

pounds or the one indicating an ability to frequently lift 20 pounds. R. p. 444. The mark actually appears between the two boxes, making it difficult to ascertain whether Dr. Suvarnakar believed that the Plaintiff could frequently lift up to 20 pounds. *Id.* In concluding that the Plaintiff was capable of light work, the ALJ was apparently guided by the following language in Dr. Suvarnakar's second examination report:

> RANGE OF MOTION: Range of motion is attached which shows normal postural activity. Lifting and carrying is somewhat limited to around 20 pounds because of back pain and feet pain.

R. p. 442. Nevertheless, Dr. Suvarnakar did not indicate how much the Plaintiff could *occasionally* lift on either assessment form. R. pp. 444, 453. These discrepancies, which are the result of very sloppy record keeping, clearly call the basis for the ALJ's residual functional capacity assessment into doubt. Since the Court has determined that a remand is necessary because of the equivalency issue, it is unnecessary for the Court to determine whether the inconsistencies in Dr. Suvarnakar's record keeping, standing alone, would warrant a remand. It suffices to say, at this point, that the matter should be explored more fully by the Commissioner if her equivalency determination at step three is unfavorable to the Plaintiff, thereby necessitating a residual functional capacity determination.

The ALJ relied on the report of Dr. Dilip Kar, a nonexamining physician, in order to support his residual functional capacity assessment. R. p. 16. This report was completed on June 25, 2003. R. p. 462. Dr. Kar reported that the Plaintiff could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, and stand, walk or sit for about six hours in an eight-hour workday. R. p. 456. He indicated that the Plaintiff's pushing and pulling abilities were unlimited, and that she had no postural,

manipulative, visual, communicative or environmental limitations. R. pp. 457-459. Dr. Kar's report, however, cannot be viewed as more reliable than Dr. Suvarnakar's unclear findings. The record clearly shows that Dr. Kar relied on his interpretation of Dr. Suvarnakar's second examination report in order to conclude that the Plaintiff was capable of performing light work. R. p. 464. For this reason, the value of Dr. Kar's findings depends on the extent to which the actual findings of Dr. Suvarnakar can be ascertained.

In her third and final argument, the Plaintiff contends that the ALJ failed to account for her need to use a cane when he determined her residual functional capacity. Document No. 9 pp. 13-15. The Commissioner argues that consideration of the Plaintiff's use of a cane is precluded by the language of 42 U.S.C. § 423(d)(1)(A), which defines the term "disability" as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" Document No. 11 p. 23. Although the ALJ noted that the Plaintiff had been using a cane for three or four months, he did not appear to discount this fact solely on the ground that she had used it for less than twelve months. R. p. 15. In any event, the Commissioner's argument is unavailing, since the plain language of the statute refers not only to a medically determinable impairment which *has lasted* for twelve months or more, but also to one which *can be expected to last* for the requisite period of time. 42 U.S.C. § 423(d)(1)(A).

The Court expresses no opinion as to whether the ALJ's residual functional capacity assessment

properly accounted for the Plaintiff's use of a cane.[5] The Commissioner will have another opportunity to explore this issue on remand, since the Court has concluded that further administrative proceedings are needed for other reasons. The requirements of the governing law, however, are worth stating. If the Commissioner determines that the Plaintiff's peripheral neuropathy does not meet or medically equal Listing 11.14, thereby necessitating another residual functional capacity determination, the Commissioner must consider the cumulative effect of all of the Plaintiff's impairments. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). The ultimate residual functional capacity determination must account for all of the limitations supported by the record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). If the Commissioner chooses to rely on the testimony of a vocational expert, all of the Plaintiff's limitations must be conveyed to the vocational expert within the context of a hypothetical question. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). Nevertheless, not every limitation *alleged* by the Plaintiff must be factored into the residual functional capacity assessment or included within the hypothetical question. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Instead, only those limitations which are *credibly established* must be accounted for. *Id.* The Commissioner may rely exclusively on the guidelines contained in 20 C.F.R. Pt. 404, Subpt. P, App. 2, as she did in this case, only if her assessment of the Plaintiff's residual functional capacity is such that the Plaintiff falls directly within the class of persons for which reliance on dispositive rulemaking is appropriate, and for which case-by-case consideration of the availability of existing jobs is unnecessary. *Heckler v. Campbell*, 461 U.S. 458, 467-468, 103 S.Ct. 1952, 1957-1958, 76 L.Ed.2d

[5] Although the issue of the cane was raised at the hearing and addressed in Mr. Wyland's testimony, the ALJ did not rely on such testimony when he issued his decision. R. pp. 37-47. Instead, the ALJ opted to base his decision on 20 C.F.R. Pt. 404, Subpt. P, App. 2. R. p. 17.

66, 74-75 (1983). Since the Plaintiff has no nonexertional impairments, reliance on 20 C.F.R. Pt. 404, Subpt. P, App. 2 is not automatically precluded. *Poulos*, 2007 U.S. App. LEXIS 1496, at 16-18, 2007 WL 163065, at 5-6; *Sykes v. Apfel*, 228 F.3d 259, 266-271 (3d Cir. 2000).

In summary, the decision of the Commissioner is not "supported by substantial evidence" within the meaning of 42 U.S.C. § 405(g). The ALJ failed to explain his rationale for concluding that the Plaintiff's peripheral neuropathy did not meet or medically equal Listing 11.14. Furthermore, the ALJ's assessment of the Plaintiff's residual functional capacity was based largely on the opinion of an examining physician who was both unclear and inconsistent. The Commissioner will have to take a closer look at this case on remand.

Accordingly, the Court must grant the Plaintiff's Motion for Summary Judgment (Document No. 8) to the extent that it seeks a remand, deny the Plaintiff's Motion for Summary Judgment (Document No. 8) to the extent that it seeks an award of benefits, and deny the Commissioner's Motion for Summary Judgment (Document No. 10). The decision of the Commissioner is reversed, and the case is remanded to her for further administrative proceedings consistent with this opinion. An appropriate order follows.

**AND NOW**, this 29th day of January, 2007, this matter coming before the Court on the parties' cross-motions for summary judgment, **IT IS HEREBY ORDERED THAT**: 1) the Plaintiff's Motion for Summary Judgment (Document No. 8) is **DENIED** to the extent that it seeks an award of benefits and **GRANTED** to the extent that it seeks a reversal of the decision of the Defendant, and a remand for further administrative proceedings; and 2) the Defendant's Motion for Summary Judgment (Document No. 10) is **DENIED**.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

cc: Charles T. Pankow, Esq.
John J. Valkovci, Jr., AUSA